UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| MARÍA ANTONIA MEDINA RIVERA a/k/a MARÍA ANTONIA BELÉN, NORBERTO MEDINA RIVERA, ANNA AMELIA MEDINA RIVERA, JAVIER MEDINA RIVERA Y SUÁN MEDINA RIVERA<br><br>    Plaintiff,<br><br>                Vs.<br><br>HOSPITAL HIMA SAN PABLO HUMACAO; PROFESSIONAL PARTNERSHIP X, Y & Z; RICHARD ROE; DOCTOR JOHN ROE; CORPORATIONS X, Y & Z<br><br>    Defendants. | CIVIL NO.<br><br>PLAINTIFFS DEMAND<br>TRIAL BY JURY |

## COMPLAINT

**TO THE HONORABLE COURT:**

**COME NOW** plaintiffs through their undersigned attorney and very respectfully **STATE, ALLEGE AND PRAY:**

### I. JURISDICTION

1.1     The jurisdiction of this Court is invoked under the provisions of Title 28 of the United States Code, Section 1332 (a) (1).

1.2     This action is of a civil nature, invoking exclusive of interest and costs a sum in excess of seventy five thousand ($75,000.00) dollars. Every issue of law and fact alleged herein is wholly between citizens of different states. Plaintiffs invoke the diversity jurisdiction of this Honorable Court pursuant to the provisions of Article III of the Constitution of the United States.

1.3     The Statute of Limitations was tolled by letters sent on September 30th, 2011, September 19th, 2012, and September 17th, 2013.

1.4     Because of plaintiff's lack of information and knowledge regarding all the facts and events that surrounded Mrs. Irma Rivera's death the letters were sent with the purpose of tolling the statute of limitations in the torts action

1.5     Also, because of plaintiffs lack of information and knowledge regarding all the

facts and events that surrounded Mrs. Irma Rivera's death Mrs. Rivera's corpse was exhumed on September 30th, 2011 so that a proper autopsy could be performed in order to establish a definitive cause of death. The autopsy report was made available to plaintiffs on February 2014.

## II.  THE PARTIES

2.1     Plaintiff María Antonia Medina Rivera a/k/a María Antonia Belén is the daughter of deceased Irma Iris Rivera Torres. She is of legal age, is and has been citizen and resident of the state of Virginia and is domiciled in 2505 Honey Flower Ct. Virginia Beach, Virginia 23456.

2.2     Plaintiff Norberto Medina Rivera is the son of deceased Irma Iris Rivera Torres. He is of legal age, is and has been citizen and resident of the state of Florida and is domiciled in 501 Trellis Ct. Orlando, Florida 32809.

2.3     Plaintiff Anna Amelia Medina Rivera is the daughter of deceased Irma Iris Rivera Torres. She is of legal age, is and has been citizen and resident of the state of Florida and is domiciled in 13621 Bay view Isle Dr. #308 Orlando, Florida 32824.

2.4     Plaintiff Javier Medina Rivera is the son of deceased Irma Iris Rivera Torres. He is of legal age, is and has been citizen and resident of the state of Florida and is domiciled in 501 Trellis Ct. Orlando, Florida 32809.

2.5     Plaintiff Suán Medina Rivera is the daughter of deceased Irma Iris Rivera Torres. She is of legal age, is and has been citizen and resident of the state of Florida and is domiciled in 501 Trellis Ct. Orlando, Florida 32809.

2.6     Defendant Hospital HIMA San Pablo Humacao is an entity organized under the laws of the Commonwealth of Puerto Rico, with its principal place of business in the said Commonwealth of Puerto Rico.

2.7     Codefendants, whose names are unknown to plaintiffs, Richard Roe, Dr. John Roe are citizens of the Commonwealth of Puerto Rico and are jointly and severally liable to plaintiffs.

2.8     Codefendants Corporations X, Y & Z, whose name is unknown to plaintiffs, is/are an entity (ies) organized under the laws of the Commonwealth of Puerto Rico, with its principal place of operation in the said Commonwealth of Puerto Rico.

2.9     Codefendants Professional Partnerships X, Y & Z whose name is unknown to plaintiff, are entities organized under the laws of the Commonwealth of Puerto Rico, with its principal place of operation in the said Commonwealth of Puerto Rico.

### III.  ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

3.1     On November 1, 2010, Irma Iris Rivera, 58 years old, prematurely died in Hospital HIMA San Pablo Humacao after a tortuous and painful hospitalization.

3.2     Mrs. Rivera had arrived by ambulance to the emergency room of HIMA San Pablo Humacao in the early morning of October 30, 2010. Complaining of chest pain irradiating to the left, nausea and sweats.

3.3     Mrs. Rivera had a medical history of diabetes mellitus, hypertension and hypercholesterolemia.

3.4     Around. 8:00 AM she was evaluated by the emergency physician and was started in treatment for Acute Coronary Syndrome (ACS) and consulted to internal medicine.

3.5     The laboratories performed presented normal troponin levels and EKG's had non-specific ST-T changes, high blood glucose levels and elevated WBC counts in 21,000.

3.6     She was transferred to telemetry unit at 11:45 am for treatment of cardiac infarct with a diagnosis of ACS, hypotension, diabetes mellitus (DM), and HTN

3.7     A cardiology consult was placed and she was evaluated by a cardiologist around noon according to the nurses' notes. The Cardiologist's consult note is illegible.

3.8     She remained under observation and treatment by Hospital HIMA San Pablo's medical and nursing personnel.

3.9     Between 8:00 and 9:00pm, on October 30th, 2010, the nurses documented that the patient had developed abdominal pain.

3.10    During the night her complaints and conditions were managed by telephone orders by the admitting physician.

3.11    The laboratory tests done at 4:47AM reported at 10:25AM on October $31^{th}$, 2010, demonstrated metabolic acidosis, leukocytosis (WBC 19.1), and glucose at 263mg/dl.

3.12    Despite a clear deterioration of her condition Mrs. Rivera was not evaluated by a physician until 1:15PM on October 31st.

3.13    On October 31st, 2010, at 1:15PM, the physician documented severe abdominal pain, abdominal distention and considered the abdomen a possible focus of her condition.

3.14    Orders were placed for Demerol, Protonix, IV antibiotics, IV fluids, KUB, and GI consult.

3.15    A CT Scan was also ordered stat but was not done until that night and the results were not available until the next day.

3.16    Mrs. Rivera was suffering a metabolic acidosis since early dawn which was not evaluated nor treated.

3.17    The laboratories ordered were incomplete and pancreatitis, a very common cause for the symptoms and presentation that the patient was suffering, was not even considered.

3.18    It was evident that Mrs. Rivera was suffering an emergency condition that needed aggressive evaluation and management.

3.19    At 5:30PM the admitting physician ordered transfer of the patient to the ICU.

3.20    At 7:00PM the nurses documented that Mrs. Rivera was suffering respiratory difficulty and was taken for her abdominal CT.

3.21    She was evaluated by the consulting gastroenterologist at 7:00PM who recognized a possible abdominal emergency condition but also failed to perform a complete differential diagnosis, evaluation and management.

3.22    At 9:00PM she was transferred to the ICU where she continued with abdominal pain requiring administration of Demerol in various instances during the night.

3.23    At 6:00AM her dextrose levels were at 425 and her respirations between 36 and 40 with an O2 sat of 96%

3.24    The CT Scan was not read until 5:30AM on November 1st with results presenting Severe Acute Pancreatitis, Bilateral Pleural Effusions, Gallbladder with gallstones, Pericarditis and no evidence of intestinal obstruction.

3.25    Mrs. Rivera was suffering from a catastrophic condition, severe pancreatitis;

[4]

which had not been treated nor managed during the last two days.

3.26    By now she was also presenting severe acidosis, hypoxemia, severe uncontrolled diabetes, renal insufficiency, drop in her HGB and sepsis with possible DIC.

3.27    Mrs. Rivera was evaluated by the admitting physician at 10:30AM when he identified an abdominal catastrophe and proceeded place consultations with various specialties and placed other treatment orders.

3.28    At 11:25AM he ordered by phone that the patient be placed in a non rebreathing mask at 100% O2 and ABG's.

3.29    As per the nurses' notes that order was not executed with until 12:00 noon.

3.30    An order for 2 ampules of sodium bicarbonate stat placed by phone at 11:27AM was not executed until 12:00 noon.

3.31    The medical record reflects that between 11:28AM and 12:00 noon the patient started with abnormal heart tracings from bradycardia to asystole that were not identified nor managed.

3.32    CPR and ACLS were started at 12:30PM and Mrs. Rivera was declared dead at 12:58PM on November 1st, 2010.

3.33    The autopsy report confirmed severe pancreatitis as the cause of death and among findings listed coronary artery disease without evidence of myocardial infarction.

3.34    While hospitalized at Hospital HIMA San Pablo-Humacao, under the treatment and supervision of its medical and paramedical personnel Mrs. Rivera continued to deteriorate and developed multiple complications, amongst them: respiratory failure, metabolic acidosis, respiratory acidosis, abdominal distension, leukocytosis, until she died.

3.35    The accelerated deterioration, the complications and damages of the patient was a direct consequence of the negligence and the absence of necessary diagnosis, treatment and supervision by all the co-defendants.

3.36    The medical and paramedical personnel of Hospital HIMA San Pablo Humacao caused by their negligence, her condition and/or allowed it to deteriorate. The management of her condition(s) was one full of gross errors and omissions.

3.37    As a result of the continued errors and omissions and inadequate and clearly erroneous medical treatment, as well as an evident abandonment and disregard for her well being on the part of the hospital's medical, paramedical and administrative personnel, Mrs. Rivera suffered multiple complications and which led to her premature death.

3.38    The medical treatment given to Mrs. Rivera during her hospitalization at Hospital HIMA San Pablo-Humacao was one of evident apathy and disregard for her well being and of abandonment on the part of the physicians and the hospital personnel; there was a lack of monitoring, negligent, delayed, and inadequate treatment as well as lack of analysis and evaluation of her symptoms and/or conditions, thus inhibiting and/or eliminating any possibility of recovery and causing her premature death.

3.39    Plaintiffs still lack complete medical records and therefore do not have full knowledge of all the facts relevant to the medical malpractice nor of all the persons liable for the damages caused to Mrs. Rivera and plaintiff.

3.40    In addition the medical records produced to plaintiffs have annotations and entries which are not contemporaneous, are inconsistent and there are alterations which point to manipulation and alteration of the medical record. There are also multiple notes and entries which are illegible.

3.41    During her hospitalization Mrs. Rivera was treated by the physicians, nurses and paramedical personnel of Hospital HIMA San Pablo Humacao and they are therefore jointly and severally liable to plaintiffs for their negligent acts and/or omissions under the provisions of articles 1802 and 1803 of the Puerto Rico Civil Code.

3.42    Mrs. Rivera's prolonged agony and untimely death was caused by the negligent and/or late treatment that was given to her by all codefendants. Had it not been by all the tortious and negligent acts, errors and omissions of all co-defendants her damages and her death, as well as plaintiffs' damages should have been avoided.

3.43    The unknown codefendants, Dr. Richard Roe, John Doe and Dr. John Roe, are physicians or paramedical personnel who treated the patient during his hospitalization at Hospital HIMA San Pablo-Humacao, and who in some way caused and/or contributed to Mrs. Rivera's damages and untimely death as well as plaintiff's damages and are jointly and severally

[6]

liable to plaintiffs.

3.44    The Professional Partnerships X, Y & Z are entities formed by the co-defendant physicians with other partners whose identity is at this moment unknown to plaintiffs and who benefited from the tortious acts of the codefendant partner; said entity and its unknown partners are therefore jointly and severally liable to plaintiff.

3.45    Corporations X, Y, Z are entities whose identity are unknown to plaintiff at this moment, which was in some way benefited by the tortious acts of one or all co-defendants and/or ordered or in any way had something to do with their tortious actions.

3.46    All codefendants are jointly and severally liable to plaintiffs under articles 1802 and 1803 of the Puerto Rico Civil Code for their torts and negligent acts and omissions, which departed from the standards of medical care and treatment recognized as adequate by the medical profession in light of the modern means of instruction, education and communication, and directly caused and/or contributed to Mrs. Rivera's damages and demise as well as to injuries suffered by plaintiff.

3.47    Plaintiffs also estimate that none of the co-defendants displayed the care nor the cautionary measures that a prudent and reasonable man would in such circumstances, thus not offering Mrs. Rivera the medical attention that was due to her.

3.48    Co-defendant Hospital HIMA San Pablo Humacao was grossly negligent for not procuring nor providing Mrs. Rivera with competent medical and paramedical personnel for the diagnosis, treatment and correction of her conditions. Their negligent acts, errors and omissions directly caused and/or contributed to the damages, deterioration and death of Mrs. Rivera, who had arrived at the Hospital with a condition that was treatable.

3.49    Co-defendant Hospital HIMA San Pablo, Inc. is also liable for the negligent and inadequate medical treatment given to the patient by its medical and paramedical personnel: to wit:  lack of supervision and monitoring; for the delayed and/or lack of implementation of diagnostic and therapeutic orders by its personnel ; allowing scant and deficient medical record keeping and/or alteration and manipulation of the medical record;  allowing practices in the management of the patient in violation of its own protocols and of the best practice of medicine;  not providing necessary consultations;  causing the rapid deterioration of the

patient; failure to identify the pancreatitis and its complications and prevent the cardiorespiratory arrest; not correcting the patients conditions in a timely manner and for the negligent and/or delayed resuscitation causing the patient's premature death, among others. The negligent acts, errors and omissions of their medical, technical, administrative and paramedical personnel directly caused and/or contributed to the damages, deterioration and premature death of Mrs. Rivera

3.50    Co-defendant Hospital HIMA San Pablo, Inc. is also liable for its negligent selection of physicians who were granted privileges and for inadequately monitoring their performance in an obvious act of medical malpractice, as was happening in this case and its failure to timely and adequately intervene to provide the patient with the necessary care and treatment.  The negligent acts, errors and omissions of their medical, technical, administrative and paramedical personnel directly caused and/or contributed to the damages, deterioration and death of Mrs. Rivera.

3.51    As a direct consequence of herein co-defendants gross negligence, plaintiffs Maria Antonia Medina Rivera a/k/a Maria Antonia Belen, Norberto Medina Rivera, Anna Amelia Medina Rivera, Javier Medina Rivera y Suan Medina Rivera have suffered, suffer and will forever suffer deep and severe mental and emotional anguishes, severe depression, and loss of enjoyment of life for the loss of their beloved mother.  They request as compensation for their damages a sum of no less than Two Hundred Fifty Thousand ($250,000.00) Dollars for each one.

3.52    As a direct consequence of herein co-defendants gross negligence Mrs. Luz Rivera Medina suffered immensely and died prematurely. Plaintiffs Maria Antonia Medina Rivera a/k/a Maria Antonia Belen, Norberto Medina Rivera, Anna Amelia Medina Rivera, Javier Medina Rivera y Suan Medina Rivera, her sole heirs, request a sum of no less than  Five Hundred Thousand ($500,000.00) Dollars as compensation for the suffering and mental and/or emotional anguish endured by their mother, which they inherit.

Wherefore, plaintiffs respectfully request from this Honorable Court to:

1. Grant a judgment against co-defendants for the sums herein requested together with pre-judgment interests, costs and reasonable attorney's fees.

2. Grant plaintiffs such other relief, as it may deem proper and necessary under the

circumstances.

3. Pursuant to rule 38(b) of the Federal Rules of Civil Procedure, plaintiffs also hereby request a trial by jury in this action.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 30th day of November, 2012.

<u>**S/Rafael E. García Rodón**</u>
**RAFAEL E. GARCIA RODON**
**USDC-PR No. 129911**
Banco Popular de PR Bldg.
206 Tetúan Street
7th Floor, Suite 701
San Juan, PR 00901
Tel. (787) 722-7788
Fax (787) 722-7748
E-mail: rgrlaw@gmail.com

[9]